IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

**ROY M. CARROLL,**                      Case No. 1:16 CV 2875

    Plaintiff,                           Judge Benita Pearson

    v.                                     Magistrate Judge James R. Knepp, II

**COMMISSIONER OF SOCIAL SECURITY,**

    Defendant.                      REPORT AND RECOMMENDATION

### INTRODUCTION

Plaintiff Roy M. Carroll ("Plaintiff") filed a Complaint against the Commissioner of Social Security ("Commissioner") seeking judicial review of the Commissioner's decision to deny disability insurance benefits ("DIB") and supplemental security income ("SSI"). (Doc. 1). The district court has jurisdiction under 42 U.S.C. §§ 1383(c) and 405(g). This matter has been referred to the undersigned for preparation of a report and recommendation pursuant to Local Rule 72.2. (Non-document entry dated November 28, 2016). Following review, and for the reasons stated below, the undersigned recommends the decision of the Commissioner be affirmed.

### PROCEDURAL BACKGROUND

Plaintiff filed for DIB and SSI in January 2014, alleging a disability onset date of May 15, 2013. (Tr. 197-98, 204-07). His claims were denied initially and upon reconsideration. (Tr. 138-40, 145-51, 153-55, 157-61). Plaintiff then requested a hearing before an administrative law judge ("ALJ"). (Tr. 165-66). Plaintiff (represented by counsel), and a vocational expert ("VE") testified at a hearing before the ALJ in December 2015. (Tr. 42-93). On January 13, 2016, the ALJ found Plaintiff not disabled in a written decision. (Tr. 18-32). The Appeals Council denied Plaintiff's request for review, making the hearing decision the final decision of the Commissioner. (Tr. 1-6);

*see* 20 C.F.R. §§ 404.955, 404.981, 416.1455, 416.1481. Plaintiff timely filed the instant action on November 28, 2016. (Doc. 1).

**FACTUAL BACKGROUND**[1]

<u>Personal and Vocational History</u>

Plaintiff was born in December 1968. (Tr. 197). He earned his GED in 2013 (Tr. 265, 388), attended one year of technical college, and then obtained a real estate license (Tr. 53). He has past relevant work experience as a real estate agent, automotive salesman, customer service representative, and truck driver. (Tr. 30, 56-59, 84-85).

<u>Relevant Medical Evidence</u>

At an appointment in December 2013, Plaintiff reported that since a May 2013 physical attack, he experienced depression, difficulty sleeping, becoming easily fatigued, and lack of motivation. (Tr. 321, 323). He agreed to a psychiatry referral. (Tr. 323).

Plaintiff underwent a mental health assessment with a social worker in January 2014. (Tr. 325-30). He complained of anger, depression, anxiety, low energy, exhaustion, crying spells, and poor concentration. (Tr. 325). He stated his depression and anxiety were "mainly dependent on stressors", including financial concerns, legal issues, loss of a parent, and difficulty with interpersonal relationships. (Tr. 326). A mental status examination showed Plaintiff was well-

---

1. While Plaintiff summarizes both his physical and mental impairments (Doc. 16, at 2-5), he only challenges the ALJ's determination with regard to his mental impairments; as such, all other issues are waived. *See Kennedy v. Comm'r of Soc. Sec.*, 87 F. App'x 464, 466 (6th Cir. 2003) (issues not raised in claimant's brief are waived); *see also McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones.") (citation and internal quotation omitted). Thus, the factual background summarized herein only includes evidence related to his mental impairments.

groomed, cooperative, and oriented to time and place, but was dysphoric, and anxious. (Tr. 328). He displayed clear speech, logical thought process, good judgment and insight, no abnormal or psychotic thoughts, adequate recent and remote memory, sustained attention span and concentration, "[o]kay" fund of knowledge, and appropriate language. *Id.* The social worker's diagnostic impression was major depressive disorder, single episode, and anxiety disorder, unspecified. (Tr. 329). Plaintiff received a global assessment of functioning ("GAF") score of 65-75. *Id.*[2]

Plaintiff had a pharmacological management appointment in March 2014. (Tr. 345-47). He reported no adverse effects from his medication, and was "very calm and reasonable". (Tr. 345-46). A mental status examination revealed Plaintiff demonstrated: a well-groomed appearance, good hygiene; cooperation, restlessness, and anxious behavior; pressured speech; a circumstantial and rambling thought process; no evidence of paranoia, delusions, or perceptual disturbance; an anxious and irritable mood; a blunt affect; sustained attention and concentration; normal recent and remote memory; and good judgment and insight. (Tr. 346). He was oriented to time, person, and place; and talkative. *Id.* The physician's impression was that Plaintiff was: "anxious and in the midst of legal proceedings involving his brother who is mentally slow and his brother who he has

---

2. The GAF scale represents a "clinician's judgment" of an individual's symptom severity or level of functioning. American Psychiatric Association, *Diagnostic & Statistical Manual of Mental Disorders*, 32-33 (4th ed., Text Rev. 2000) (DSM-IV-TR). A GAF score between 61 and 70 indicates "[s]ome mild symptoms (e.g., depressed mood or mild insomnia) OR some difficulty in social, occupational, or school functioning, (e.g., occasional truancy or theft within the household) but generally functioning pretty well, has some meaningful interpersonal relationships." *Id.* at 34. Even though GAF scores were eliminated in the Diagnostic and Statistical Manual of Mental Disorders, Fifth Edition ("DSM-V"), which was published in 2013, the Sixth Circuit has since explained that GAF scores still "may assist an ALJ in assessing a claimant's mental RFC." *Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 835 (6th Cir. 2016).

conflict with for his entire life". *Id.* His diagnosis was listed as an adjustment disorder with anxiety, and he was advised to follow up in two months. (Tr. 346-47).

In June 2014, Plaintiff underwent a psychological evaluation with Anita B. Gantner, Ph.D. (Tr. 388-90). Plaintiff reported he had signed a contract to start a sales position the following week. (Tr. 388). He also stated he had recently received shared custody of his two children. *Id.* Plaintiff listed "fitness" as a hobby. *Id.* A mental status examination showed: a well-groomed appearance; cooperative and restless behavior; he was "hyperaroused"; orientation to person, place, date, situation, and recent events; pressured speech; appropriate, logical, and coherent language; organized thought process; tight association; no abnormal or psychotic thoughts; fair judgment and insight; good recent and remote memory; "reported to be difficult" attention span and concentration; adequate fund of knowledge; irritable mood; and appropriately reactive affect. (Tr. 389). Plaintiff "readily acknowledged" his depressive symptoms peaked around the time he was assaulted and persisted "until March of this year when he had a confrontation with his brother". (Tr. 390). Plaintiff reported that there was a "significant change" in his mood "for the better" after the confrontation with his brother *Id.* Dr. Gantner concluded Plaintiff had "gotten his pain and emotional state under control in recent history." *Id.* She noted she did "not think he is suffering from depression at this time", but may benefit from "a low dose of a stimulant" to help with attention and focus. *Id.*

From February 2016 to April 2016, Plaintiff underwent psychiatric treatment with Neera Gupta, M.D. (Tr. 584-89, 581-82, 578-79). Dr. Gupta assessed Plaintiff's symptoms as "severe". (Tr. 587). She diagnosed Plaintiff with bipolar disorder and post-traumatic stress disorder (acute). (Tr. 588, 582, 579).

4

State Agency Reviewers

In July 2014, state agency reviewer Karla Voyten, Ph.D., reviewed the record. (Tr. 117). Dr. Voyten noted Plaintiff did not allege psychological impairments in his initial claim, but endorsed mood and anxiety problems after he filed for benefits. *Id.* She concluded Plaintiff had mild restriction of activities of daily living; no difficulties in maintaining social functioning; mild difficulties in maintaining concentration, persistence, or pace; and no episodes of decompensation *Id.* Dr. Voyten determined Plaintiff's mental impairments were not severe. *Id.*

Hearing Testimony

*Plaintiff's Testimony*

Plaintiff testified he lived alone and his children visited up to five times a week, but no longer spent the night because he was "too . . . sedated and I have severe sleep apnea and insomnia and I can't stay awake for long durations." (Tr. 51). Plaintiff lived with, and cared for, his brother with disabilities from 2013 until March 2014, but he was unable to continue to do so because "he requires too much help from me". (Tr. 51-52); *see also* Tr. 53 ("I was caring for him, buying him stuff, cooking for him, doing stuff like that.") Plaintiff stated he was 6'2'' and approximately 305 pounds. (Tr. 52). He stated he used to be a weight lifter, but had gained 50 to 60 pounds since he was injured, and the medication he took for sleep apnea made him gain weight. *Id.*

Plaintiff stated he had a valid commercial drivers' license (Tr. 53), but later stated it was "in escrow". (Tr. 59). He stated he last attempted to work in July 2014 in a sales position (which ended up being a field position), but had to leave because "it was too much for [him]." (Tr. 54). Plaintiff also took his children to the playground and pushed his daughter on the swings, but it caused him pain. *Id.*

Plaintiff stated he was unable to work due to back pain, neck problems, shoulder problems, fatigue, memory problems, inability to focus, and sleep apnea. (Tr. 59-60). He attributed his difficulty sleeping to use of his CPAP machine, which he had to "constantly adjust []". (Tr. 63-64). Plaintiff stated he took "about 15 pills a day" including, "something for acid reflux . . . something for high cholesterol . . . a muscle relaxer . . . an anti-inflammatory . . . a slow release narcotic for pain . . . and . . . Percocet." (Tr. 68). He was not sure if the medication caused him side effects, but possibly attributed his fatigue, concentration and memory problems to the medication. *Id.* Plaintiff admitted he "smoke[d] lightly []" and had "a beer every once in a while", but denied consuming illegal drugs. (Tr. 69-70).

Plaintiff lived alone and performed the cooking, cleaning, vacuuming, and sweeping—but had difficulty performing some those tasks, and added that his ex helps him sometimes. (Tr. 75). He stated that on an average day he slept, watched television, and ate, and that he "[didn't] go anywhere much anymore." (Tr. 77).

Plaintiff testified he was not undergoing any mental health treatment at the time of the hearing. (Tr. 82). He stated: "well, when it first happened, I was having some problems with anxiety and . . . depression. I was overwhelmed at what was going on . . ." *Id.* Plaintiff stated he once saw a sleep psychologist to try and "get past the insomnia", and that one of his doctors recommend he see a psychiatrist "for some of the pain issues that I'm having right now". *Id.*

*VE's Testimony*

The first hypothetical the ALJ posed to the VE consisted of an individual of Plaintiff's age, education, and past work experience, limited to: "medium [work] with frequent right hand controls. The manipulative limitations, frequent reaching overhead with the right. The postural limitations to include frequent climbing of ramps and stairs, never to climb ladders and scaffolds.

Frequently balance, stoop, kneel, crouch, and crawl." (Tr. 85-86). The VE determined such an individual could perform Plaintiff's past work of real estate agent, automotive sale representative, customer service representative, and truck driver, as they are normally performed and as Plaintiff performed them. (Tr. 86-87). The VE also determined the individual could perform other work of packager (82,000 positions available in the national economy), laundry worker (88,000 positions available in the national economy), and industrial cleaner (75,000 positions available in the national economy). (Tr. 87).

The second hypothetical included all the limitations of the first, with the following modifications: limited to light exertional level; frequent left hand controls; occasional reaching overhead with the left and the right; frequent reaching in all other directions with the left and right; occasional climbing of ramps and stairs, balancing, stooping, kneeling, crouching, and crawling; and no exposure to unprotected heights and moving mechanical parts, or operating any motor vehicle. (Tr. 87-88). The VE stated such an individual could perform Plaintiff's past work of real estate agent and customer service representative, both as normally performed and as Plaintiff actually performed them. (Tr. 88). He added that the individual could also perform other work of packager in the light category, bench assembler, and mail clerk. (Tr. 88-89).

The third hypothetical consisted of an individual with the same limitations as in the second, but modified the exertional category to sedentary. (Tr. 89). The VE determined the individual could perform Plaintiff's past work of real estate agent (as he performed it, but not as generally performed according to the DOT); and customer service representative (both as generally performed and as Plaintiff actually performed it). *Id.* The VE added that such an individual could also perform other work of telephone solicitor, receptionist, and call out operator. (Tr. 89-90).

The fourth hypothetical consisted of an individual with the same limitations as the third but with the following added limitations: off task twenty percent of an eight-hour workday in addition to normal work breaks, and/or absent from work two days per month. (Tr. 90). The VE determined, based on his experience, training, and education, such an individual would be unable to perform any work. (Tr. 90-91).

ALJ Decision

In an unfavorable written decision dated January 13, 2016, an ALJ made the following findings of fact and conclusions of law:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2017.

2. The claimant has not engaged in substantial gainful activity since May 15, 2013, the alleged onset date.

3. The claimant has the following severe impairments: degenerative disc disease of the spine, left rotator cuff surgery, obesity and obstructive sleep apnea.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except: He could occasionally lift and carry twenty pounds and frequently lift and carry ten pounds. He could sit for six hours of an eight-hour workday. He could stand or walk for six hours of an eight-hour workday. He could push or pull within the lifting and carrying limitations. He could frequently perform bilateral hand controls. He could occasionally reach overhead with the bilateral upper extremities. He could frequently reach in all other all directions with the bilateral upper extremities. He could occasionally climb ramps and stairs. He could never climb ladders or scaffolds. He could occasionally balance, stoop, kneel, crouch or crawl. He should never be exposed unprotected heights, moving mechanical parts and operating a motor vehicle.

6. The claimant is capable of performing past relevant work as a real estate agent and customer service representative. This work does not require the

>    performance of work-related activities precluded by the claimant's residual functional capacity.
>
> 7. The claimant has not been under a disability, as defined in the Social Security Act, from May 15, 2013, through the date of this decision.

(Tr. 15-32) (internal citations omitted).

## STANDARD OF REVIEW

In reviewing the denial of Social Security benefits, the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992). The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citing 42 U.S.C. § 405(g)). Even if substantial evidence or indeed a preponderance of the evidence supports a claimant's position, the court cannot overturn "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003).

## STANDARD FOR DISABILITY

Eligibility for benefits is predicated on the existence of a disability. 42 U.S.C. §§ 423(a), 1382(a). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a) & 416.905(a); *see also* 42 U.S.C. § 1382c(a)(3)(A).

The Commissioner follows a five-step evaluation process—found at 20 C.F.R. §§ 404.1520 and 416.920—to determine if a claimant is disabled:

1. Was claimant engaged in a substantial gainful activity?

2. Did claimant have a medically determinable impairment, or a combination of impairments, that is "severe," which is defined as one which substantially limits an individual's ability to perform basic work activities?

3. Does the severe impairment meet one of the listed impairments?

4. What is claimant's residual functional capacity and can claimant perform past relevant work?

5. Can claimant do any other work considering his residual functional capacity, age, education, and work experience?

Under this five-step sequential analysis, the claimant has the burden of proof in Steps One through Four. *Walters,* 127 F.3d at 529. The burden shifts to the Commissioner at Step Five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.* The ALJ considers the claimant's residual functional capacity, age, education, and past work experience to determine if the claimant could perform other work. *Id.* Only if a claimant satisfies each element of the analysis, including inability to do other work, and meets the duration requirements, is he determined to be disabled. 20 C.F.R. §§ 404.1520(b)-(f) & 416.920(b)-(f); *see also Walters*, 127 F.3d at 529.

## DISCUSSION

Plaintiff argues the ALJ erred: 1) in his Step Two evaluation by failing to find Plaintiff's mental impairments severe; and 2) in his Step Four determination by failing to consider the effect of Plaintiff's mental impairments on the RFC and determining Plaintiff could perform his past relevant work. (Doc. 16, at 6-8). The Commissioner responds the ALJ's decision, including the RFC, is supported by substantial evidence because he reasonably determined Plaintiff's severe

impairments at Step Two, and reasonably relied on the VE's testimony to determine Plaintiff could work. (Doc. 17, at 7-14).

Step Two

At Step Two of the disability analysis, the ALJ determines whether a claimant has a medically determinable impairment (or a combination of impairments), that is "severe," which is defined as an impairment which significantly limits the physical or mental ability to perform basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c).

In the Sixth Circuit, "the step two severity regulation . . . has been construed as a *de minimis* hurdle in the disability determination process." *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1998). The regulations do not require the ALJ to designate each impairment as "severe" or "non-severe"; rather, the determination at Step Two is merely a threshold inquiry. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). "After an ALJ makes a finding of severity as to even one impairment, the ALJ 'must consider limitations and restrictions imposed by *all* of an individual's impairments, even those that are not 'severe.'" *Nejat v. Comm'r of Soc. Sec.*, 359 F. App'x 574, 576 (6th Cir. 2009) (quoting SSR 96-8p, 1996 WL 374184, at *5). In other words, if a claimant has at least one severe impairment, the ALJ must continue the disability evaluation and consider all limitations caused by the claimant's impairments, severe or not. The relevant inquiry is whether "you do not have *any*" severe impairments. 20 C.F.R. §§ 404.1520(c), 416.920(c) (emphasis added); *see also Nejat*, 359 F. App'x at 576-77. If an ALJ considers all of a claimant's impairments in the remaining steps of the disability determination, the failure to find additional severe impairments does not constitute reversible error. *Id.* at 577 (citing *Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987)).

11

Here, at Step Two of the sequential evaluation, the ALJ found Plaintiff had severe impairments of degenerative disc disease of the spine, left rotator cuff surgery, obesity, and obstructive sleep apnea. (Tr. 21). He considered the limitations caused by Plaintiff's medically determinable mental impairments as well, but concluded that they did not cause more than minimal limitation on his ability to perform basic mental work activities and, therefore, were not severe. *Id.* The ALJ explained:

> In making this finding, the undersigned has considered the four broad functional areas set out in the disability regulations for evaluating mental disorders and in section 12.00C of the Listing of Impairments (20 CFR, Part 404, Subpart P, Appendix 1). These four broad functional areas are known as the "paragraph B" criteria.
>
> The first functional area is activities of daily living. In this area, the claimant has mild limitation. The claimant stated he previously lived with his brother (Exhibit 3F, p. 21) and now lives alone. He is able to perform his own household chores. At a mental health examination, he was well groomed. At the December 4, 2015 hearing, he testified that he has shared custody of his children and he cares for them only during the day.
>
> The next functional area is social functioning. In this area, the claimant has no limitation. The claimant spends time with his children. In 2014, [[3] .]
>
> The third functional area is concentration, persistence or pace. In this area, the claimant has mild limitation. The claimant stated he likes to exercise (Exhibit 3F, p. 21). At the December 4, 2015 hearing, he testified he spends his day watching television and movies.
>
> The fourth functional area is episodes of decompensation. In this area, the claimant has experienced no episodes of decompensation which have been of extended duration. There is no evidence in the record of any psychiatric hospitalization due to decompensation for an extended duration.
>
> Because the claimant's medically determinable mental impairments cause no more than "mild" limitation in any of the first three functional areas and "no" episodes of decompensation which have been of extended duration in the fourth area, they are nonsevere (20 CFR 404.1520a(d)(l) and 416.920a(d)(l)).

---

3. The end of this sentence is inexplicably missing from the ALJ's decision.

> The limitations identified in the "paragraph B" criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. ***

*Id.*

Importantly, "when an ALJ considers all of a claimant's impairments in the remaining steps of the disability determination, an ALJ's failure to find additional severe impairments at step two '[does] not constitute reversible error.'" *Fisk v. Astrue*, 253 F. App'x 580, 583 (6th Cir. 2007) (quoting *Maziarz*, 837 F.2d at 244). While the severity determination is "a *de minimis* hurdle in the disability determination process", *Higgs*, 880 F.2d at 862, here, Plaintiff cleared that hurdle because the ALJ found severe impairments at Step Two. *See* Tr. 21.

Therefore, it is immaterial whether the ALJ considered Plaintiff's mental impairments severe. 20 C.F.R. § 416.920(c) (relevant inquiry at step two is whether "you do not have *any*" severe impairments (emphasis added)); *Nejat*, 359 F. App'x at 576-77. Because he found severe physical impairments, the ALJ was required to continue the disability evaluation and consider all the limitations caused by the claimant's impairments, severe or not. As discussed below, the ALJ considered the effects of all Plaintiff's impairments—including his mental impairments—as they related to his RFC; therefore, the ALJ did not err at Step Two. *Id.* at 577.

Step Four

Plaintiff next argues the ALJ erred by failing to incorporate mental limitations in the RFC and, thus, by determining Plaintiff could perform his past work. After a review of the record, the undersigned finds the ALJ properly considered both Plaintiff's severe and non-severe impairments in the remaining steps of the analysis, and in his conclusion Plaintiff was capable work. Within his Step Two analysis the ALJ explained:

> ***The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraph B of the

adult mental disorders listings in 12.00 of the Listing of Impairments (SSR 96-8p). Therefore, the following residual functional capacity assessment reflects the degree of limitation the undersigned has found in the "paragraph B" mental function analysis.

A mental health status examination on January 13, 2014 noted he was well groomed and he was oriented to time, person and place (Exhibit 3F, p. 18). His speech was clear and his thought process was logical. He had good judgment and insight. He had adequate recent and remote memory. He sustained his attention and concentration during the session. His mood was dysphoric and anxious. His mood was congruent. He was diagnosed with major depressive disorder, single episode, anxiety disorder, unspecified, and he was assigned a global assessment of functioning (GAF) score of 65-75, indicative of mild symptoms to no more than slight impairment in social, occupational or school functioning. This GAF score supports the conclusion that the claimant's mental health impairments are not severe. Additional notes reflect he was treated from [sic] anxiety and a mood disorder.

Psychological evaluation on June 17, 2014 noted he was oriented to person, place, date, situation, and recent events (Exhibit 3F, p. 81). He was hyperaroused. His speech was pressured and his language was logical and coherent. His thought process was organized. He had good recent and remote recall. He needed prompts and cues to identify complaints and concerns. Symptoms include agitation, anxiety/panic attacks, decreased frustration tolerance and irritability. He acknowledged depressive symptoms that peaked at the time of the assault. He has panic attacks when there are many people around. He reported fatigue, decreased endurance, headaches and pain. He denied any medical problems.

Karen Voyten, Ph.D., a State Agency psychological consultant, reviewed the claimant's case file on July 17, 2014. She found the claimant had mild limitations in his restrictions of daily living; no difficulties in maintaining social functioning; mild limitations in maintaining concentration, persistence or pace; and no episodes of decompensation for an extended duration (Exhibits 5A and 6A). The undersigned gave great weight to the State Agency opinion that the claimant's mental health impairments are not severe because it is supported by the preponderance of evidence.

(Tr. 21-22).

The ALJ appropriately considered evidence in the record that Plaintiff's mental impairments caused at most mild problems, including a mental health status examination, a psychological evaluation, and the opinion of state agency psychological consultant, Dr. Voyten. (Tr. 22). He noted the January 2014 exam showed that while Plaintiff exhibited a dysphoric mood

14

and anxiousness, he was well groomed; oriented to time, person, and place; with clear speech, logical thought process, good insight and judgment, adequate recent and remote memory, sustained attention and concentration during the exam; and had a congruent mood. *Id.* (citing Tr. 328). The ALJ noted Plaintiff was assigned a GAF score of 65-75, indicating mild symptoms.[4]

The ALJ also considered the June 2014 psychological evaluation, which showed Plaintiff was oriented to person, place, date, situation, and recent events. (Tr. 22) (citing Tr. 388-90). He noted at that time Plaintiff was logical and coherent, with an organized thought process; good recent and remote recall; but needed prompts and cues to identify complaints and concerns. *Id.* Plaintiff had subjective complaints of agitation, anxiety/panic attacks, decreased frustration tolerance, irritability, fatigue, decreased endurance, headaches, and pain. *Id.* The ALJ noted that during the examination, Plaintiff stated his depressive symptoms peaked at the time of the assault.[5]

The ALJ also noted the state agency psychological consultant concluded Plaintiff had: 1) mild limitations in his restrictions of daily living; 2) no difficulties in maintaining social functioning; 3) mild limitations in maintaining concentration, persistence, or pace; and 4) no episodes of decompensation. (Tr. 22) (citing Tr. 116-17, 127-28). The ALJ appropriately gave great weight to this opinion and noted it was "supported by the preponderance of evidence." (Tr. 22). The ALJ did not err in his reliance on the opinion of the state agency reviewer in finding Plaintiff did not require mental limitations in his RFC. This uncontested opinion was given significant weight and is a reliable source upon which to base an RFC. *See* 20 C.F.R. §§

---

4. A GAF score between 61 and 70 indicates "[s]ome mild symptoms (e.g., depressed mood or mild insomnia) OR some difficulty in social, occupational, or school functioning, (e.g., occasional truancy or theft within the household) but generally functioning pretty well, has some meaningful interpersonal relationships."
5. Plaintiff does not challenge the ALJ's credibility assessment and, even so, a reviewing court does not resolve conflicts in the evidence or render decisions regarding witness credibility. *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007).

404.1527(e)(2)(i), 416.927(e)(2)(i); *Vorholt v. Comm'r of Soc. Sec.*, 409 F. App'x 883, 887 (6th Cir. 2011) (holding an ALJ was justified in relying on opinion of state agency physician). Further, the ALJ's determination is supported by substantial evidence in the record showing Plaintiff has mild mental impairments.[6]

The undersigned acknowledges that the ALJ's Step Four analysis with regard to Plaintiff's mental impairments is within his Step Two analysis in the written decision. *See* Tr. 21 (recognizing that "[t]he mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment . . ."). However, the ALJ thoroughly reviewed the evidence showing mild mental limitations and explained his Step Four analysis, separate from his Step Two analysis, and his reasoning for placing great weight on the uncontested opinion of the state agency reviewer. *Id.* ("Therefore, the following residual functional capacity assessment reflects the degree of limitation the undersigned has found in the 'paragraph B' mental function analysis."). The ALJ was not required to include mild mental limitations in the RFC. *See, e.g. Burrell v. Comm'r of Soc. Sec.*, 2016 WL 1165994, at *10 (E.D. Mich.), report and recommendation adopted, 2016 WL 1161548 ("mild limitations do not require incorporation into an RFC assessment."); *see also Caudill v. Comm'r of Soc. Sec.*, 2017 WL 3587217, at *6 (S.D. Ohio), report and recommendation adopted, 2017 WL 4222983 (noting "the ALJ's determination that [the plaintiff] had some mild impairment does not *require* inclusion of mental limitations into

---

6. The undersigned recognizes that Plaintiff sought treatment with Dr. Gupta after the ALJ issued his written opinion. *See* Tr. 584-89, 581-82, 578-79. However, while new and material evidence may be submitted for consideration to the Appeals Council, "we still review the ALJ's decision, not the denial of review by the appeals council." *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993). In this case, the Appeals Council reviewed Dr. Gupta's records and declined Plaintiff's request for review. When the Appeals Council declines to review the ALJ's decision, the ALJ's decision becomes the Commissioner's final decision. *Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993). Therefore, the undersigned cannot consider Dr. Gupta's records as part of a substantial evidence analysis.

the RFC" and adding "an ALJ need only include limitations arising from an impairment where the impairment affects a claimant's capacity to work.") (emphasis in original). Because the ALJ did explicitly consider Plaintiff's mental impairments, and recognized such analysis related to the RFC assessment and Steps Four and Five—any error in the construction of the opinion is harmless.

Finally, Plaintiff's assertion the ALJ erred in concluding Plaintiff could perform his past work as a truck driver, when the RFC stated he should never operate a motor vehicle—is without merit. At Step Four, the ALJ concluded Plaintiff could perform his past work of real estate agent and customer service representative—not truck driver. (Tr. 30). Therefore, the RFC is not inconsistent with the Step Four analysis.

## CONCLUSION AND RECOMMENDATION

Following review of the arguments presented, the record, and the applicable law, the undersigned finds the Commissioner's decision denying SSI and DIB supported by substantial evidence and recommends the decision be affirmed.

s/James R. Knepp II<br>
United States Magistrate Judge

*ANY OBJECTIONS* to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of service of this notice. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).